**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Carl Eugene STEPHENS, Defendant–Appellant.**

**No. 98–10374**

United States Court of Appeals, Ninth Circuit.

Filed Nov. 29, 2000

Before: SNEED, PREGERSON, Circuit Judges, and CARTER, District Judge.[1]

ORDER; Dissent by Judge O'SCANNLAIN

## ORDER

Judge Sneed voted to grant the petition for rehearing and recommended granting

---

* The Honorable Adrian G. Duplantier, Senior United States District Judge for the Eastern District of Louisiana, sitting by designation.

1. Honorable David O. Carter, United States District Judge for the Central District of California, sitting by designation.

rehearing en banc. Judges Pregerson and Carter voted to deny the petition for rehearing. Judge Pregerson voted to reject rehearing en banc and Judge Carter so recommended said rejection.

The full court was advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed.R.App.P. 35(b). The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

O'SCANNLAIN, Circuit Judge, joined by T.G. NELSON and KLEINFELD, Circuit Judges, dissenting from the denial of rehearing en banc.

Judge Sneed's opinion got it right. Reluctantly, I am bound to say that the majority opinion not only flouts controlling Supreme Court authority, it does so boldly and directly. By refusing to rehear this case en banc, we let stand an opinion that creates a per se rule precisely contrary to Supreme Court precedent and then compounds its error by inventing a conflict in the Supreme Court's Fourth Amendment jurisprudence. I respectfully dissent from the order denying rehearing en banc.

I

The Supreme Court has repeatedly instructed us that the Fourth Amendment rarely if ever imposes per se rules for determining the reasonableness of law enforcement officials' actions. Thus, in *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), the Court struck down a bright line rule devised by the Florida Supreme Court, a rule which deemed police questioning taking place on a bus a "seizure" per se premised on the theory that a reasonable person would not feel free to leave the inherently "cramped confines" of a bus. *See id.* at 439, 111 S.Ct. 2382. The Court rejected such rule, holding that the test for determining the voluntariness of a bus passenger's cooperation with the police is whether a reasonable person would feel free not to respond to the officer's questions, viewed from the totality of the circumstances. The location of the questioning, the Court explained, is just one factor to consider. *See id.*

The Supreme Court some time ago rejected another per se rule for the determination of consent and voluntariness in the context of police-citizen interactions. In *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Court held that an individual's cooperation with the police may be deemed consensual notwithstanding the fact that the individual did not know, nor was told, that he had a right not to cooperate. Such knowledge of one's right to refuse to cooperate with the police, the Court explained, was only one factor to consider in determining whether, in light of the totality of the circumstances, the cooperation was voluntary. *See id.* at 217, 231–34, 93 S.Ct. 2041.

As Judge Sneed demonstrates in his fine opinion, the majority fails to analyze the facts under the totality of the circumstances test. In reality, the majority crafts a new per se rule out of the ashes of the rules rejected in *Schneckloth* and *Bostick.*

Here, three police officers boarded a bus and made the following announcement:

> Good morning, ladies and gentlemen. We're police officers from various agencies. We're conducting a routine narcotics investigation on this bus. No one is under arrest, and you are free to leave. However, we would like to talk to you. Thank you.

Because the police officers did not specifically inform the passengers that they had a right not to answer police questions and still stay on the bus, the majority reasons that the police encounter constituted a seizure.

The majority opinion's new per se rule was squarely addressed and rejected in *I.N.S. v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), a case involving questioning by government agents at a workplace—a case the Court described as

"analytically indistinguishable" from the bus questioning in *Bostick*. See *Bostick*, 501 U.S. at 436, 111 S.Ct. 2382. Even though the workers in *Delgado* were questioned in the limited confines of the workplace, with government agents posted near the workplace exits, the Court concluded that the questioning did not amount to a seizure even though the workers were not specifically told that they were free not to respond. In the Court's words: "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Delgado*, 466 U.S. at 216, 104 S.Ct. 1758 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 231–34, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

Surely the fact that the law enforcement officers here told the passengers that they were free to leave made their presence *less* coercive than the agents' presence in *Delgado*. Perversely, the majority maintains that this very announcement transformed the police boarding into a seizure. In so holding, the majority fashions new Fourth Amendment law contrary to controlling Supreme Court precedent.

The majority relies upon *United States v. Washington*, 151 F.3d 1354 (11th Cir. 1998). The Second Circuit has already rejected *Washington* as fashioning an impermissible per se rule contrary to *Bostick*, see *United States v. Broomfield*, 201 F.3d 1270, 1275 (10th Cir.2000), and *Washington* has been called into question by the Eleventh Circuit itself, see *United States v. Smith*, 201 F.3d 1317, 1322 (11th Cir.2000). *Washington* is of dubious validity at best. By failing to reconsider our case en banc, we are fomenting a circuit split over an issue that the Supreme Court has already resolved.

## II

The majority then compounds its error by proceeding to ask the wrong question—whether passengers would feel free to leave the bus. This was precisely the analysis the Court rejected in *Bostick*. In any event, after posing this irrelevant question, the majority answers it in the negative (without aid of an evidentiary hearing, incidentally), reasoning that passengers could not feel free to leave, despite the police announcement, because "by getting off the bus, a passenger ran the risk of giving the STING officers reasonable suspicion to stop him." Slip Op. at 3246.

Nonsense. Nothing in *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), presented these bus passengers with a "Hobson's choice." They could stay on the bus and consent to questioning, stay on the bus and decline to answer, or leave the bus without legal consequence. Any Hobson's choice is entirely of the majority's own making. Nothing in *Wardlow* conflicts with the long-standing Fourth Amendment principle that "a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Bostick*, 501 U.S. at 437, 111 S.Ct. 2382. Mere refusal to cooperate with police does not constitute "flight" under *Wardlow*. See *Wardlow*, 120 S.Ct. at 676.

Misreading of *Wardlow* is particularly mischievous given that the majority deploys it to magnify the anxiety of the police-citizen encounter in this case. Today our circuit holds that a boarding police officer's invitation for bus passengers to go about their business if they wish precludes a finding of voluntariness—a conclusion which is logically perverse and squarely counter to Fourth Amendment law.

## III

After hastily answering the right question wrongly, contrary to direct Supreme Court precedent, the panel then asks the wrong question, one expressly foreclosed by *Bostick*, and in the process purports to discover a non-existent conflict in the Court's Fourth Amendment jurisprudence. The panel opinion confuses the law of

search and seizure and should have been corrected by en banc review.   I dissent.